# EXHIBIT

# A



Return to Top of Page

**15SL-CC00779**

Electronically Filed - St. Louis County - March 02, 2015 - 03:43 PM

STATE OF MISSOURI    )
                                )
ST. LOUIS COUNTY    )

### IN THE CIRCUIT COURT OF THE ST. LOUIS COUNTY
### STATE OF MISSOURI

| | |
|---|---|
| RADHA GEISMANN, M.D., P.C., individually and on behalf of all others similarly-situated, | Cause No. _____ |
|       Plaintiff, | Division |
| v. | |
| GE HEALTHCARE, INC.,<br>     Serve:  CT CORPORATION SYSTEM<br>              One Corporate Center<br>              Hartford, CT 06103-3320<br>              Hartford County | PROCESS SERVER |
| JOHN DOES 1-10, | |
|      Defendants. | HOLD SERVICE |

### CLASS ACTION PETITION

Plaintiff, RADHA GEISMANN, M.D., P.C. ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, GE HEALTHCARE, INC., and JOHN DOES 1-10 ("Defendants"):

### PRELIMINARY STATEMENT

1.    This case challenges Defendants' practice of sending unsolicited facsimile advertisements.

1

Electronically Filed - St Louis County - March 02, 2015 - 03:43 PM

2.     The federal Telephone Consumer Protection Act, 47 USC § 227, prohibits a person or entity from sending or having an agent send fax advertisements without the recipient's prior express invitation or permission ("advertising faxes" or "unsolicited faxes") and without a proper opt out notice.  The TCPA provides a private right of action and provides statutory damages of $500 per violation.

3.     Unsolicited faxes damage their recipients.  An advertising fax recipient loses the use of its fax machine, paper, and ink toner.  An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.  An advertising fax interrupts the recipient's privacy.  Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.  An advertising fax consumes a portion of the limited capacity of the telecommunications infrastructure serving the victims of advertising faxing.

4.     On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA, the common law of conversion and Missouri consumer and fraud and deceptive business practices act Chapter 407.

5.     Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## JURISDICTION AND PARTIES

6.     This court has personal jurisdiction over Defendants because Defendants transacts business within this state, have made contracts within this state, and/or have committed tortious acts within this state and otherwise have sufficient minimum contacts with the State of Missouri.

2

7.      Plaintiff RADHA GEISMANN, M.D., P.C., is a professional corporation with its principal place of business in St. Louis County, Missouri.

8.      On information and belief, Defendant, GE HEALTHCARE, INC., is a corporation with its principal place of business in New Jersey.

9.      Defendant, John Does 1-10 will be identified through discovery, but are not presently known.

**RELEVANT FACTS**

10.      On June 24, 2014 and August 18, 2014 Defendants sent 2 unsolicited facsimiles to Plaintiff in St. Louis County, Missouri.  A true and correct copy of the facsimiles are attached as Exhibits A-B (excluding any handwritten notations).

11.      The transmissions sent to Plaintiff on or about June 24, 2014 and August 18, 2014 constitutes material advertising the commercial availability of any property, goods or services.

12.      On information and belief, Defendants have sent other facsimile transmissions of material advertising the commercial availability of property, goods, or services to many other persons as part of a plan to broadcast fax advertisements, of which Exhibits A-B is an example.

13.      Defendants approved, authorized and participated in the scheme to broadcast fax advertisements by  (a) directing a list to be purchased or assembled; (b) directing and supervising employees or third parties to send the faxes; (c) creating and approving the form of fax to be sent; and (d) determining the number and frequency of the facsimile transmissions.

14.      Defendants created or made Exhibits A-B and other fax advertisements, which Defendants sent to Plaintiff and the other members of the class.

3

15.     Exhibits A-B and the other facsimile advertisements are a part of Defendants' work or operations to market Defendants' goods or services which was performed by Defendants and on behalf of Defendants.

16.     Exhibits A-B and the other facsimile advertisements are constitute material furnished in connection with Defendants' work or operations.

17.     The transmissions of Exhibits A-B to Plaintiff did not contain a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements.

18.     The transmission of facsimile advertisements, including Exhibits A-B, to Plaintiff did not contain a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements.

19.     The transmission of facsimile advertisements, including Exhibits A-B, to Plaintiff did not contain a notice that states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph 47 C.F.R. 64.1200(a)(3)(v) of this section is unlawful.

20.     The transmissions of facsimile advertisements, including Exhibits A-B, to Plaintiff did not contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

21.     The transmissions of facsimile advertisements, including Exhibits A-B, to Plaintiff was required to contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

4

22.    On information and belief, Defendants sent multiple facsimile advertisements to Plaintiff and members of the proposed classes throughout the time period covered by the class definitions.

23.    On information and belief, Defendants faxed the same and other facsimile advertisements to the members of the proposed classes in Missouri and throughout the United States without first obtaining the recipients' prior express permission or invitation.

24.    There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unlawful faxes.   Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

25.    Defendants violated 47 U.S.C. § 227 et seq. by transmitting Exhibits A-B hereto to Plaintiff and the other members of the class without obtaining their prior express permission or invitation and not displaying the proper opt out notice required by 64 C.F.R. 1200.

26.    Defendants knew or should have known that:   (a) facsimile advertisements, including Exhibits A-B, were advertisements; (b) Plaintiff and the other members of the class had not given their prior permission or invitation to receive facsimile advertisements; (c) No established business relationship existed with Plaintiff and the other members of the class; and (d) Defendants did not display a proper opt out notice.

27.    Defendants engaged in the transmission of facsimile advertisements, including Exhibits A-B, believing such transmissions were legal based on Defendants' own understanding of the law and/or based on the representations of others on which Defendants reasonably relied.

28.    Defendants did not intend to send transmissions of facsimile advertisements, including Exhibits A-B, to any person where such transmission was not authorized by law or by

5

Electronically Filed - St Louis County - March 02, 2015 - 01:43 PM

the recipient, and to the extent that any transmissions of facsimile advertisement was sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendants' own understanding of the law and/or based on the representations of others on which Defendants reasonably relied.

29.     Defendants failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission of facsimile advertisements, including Exhibits A-B, both to others in general, and specifically to Plaintiff.

30.     The transmissions of facsimile advertisements, including Exhibits A-B, to Plaintiff and other members of the class caused destruction of Plaintiff's property.

31.     The transmissions of facsimile advertisements, including Exhibits A-B, to Plaintiff and other members of the class interfered with Plaintiff's and other members of the class' exclusive use of their property.

32.     The transmissions of facsimile advertisements, including Exhibits A-B, to Plaintiff and other members of the class interfered with Plaintiff's and other members of the class' business and/or personal communications.

<u>COUNT I</u>
<u>TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227</u>

33.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

34.     Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent by or on behalf of Defendant any telephone facsimile transmissions of material making known the commercial existence of, or making qualitative statements regarding any property, goods, or services (3) with respect to whom Defendants cannot provide evidence of prior express

6

Electronically Filed - St Louis County - March 02 2015 - 03:43 PM

permission or invitation for the sending of such faxes, (4) with whom Defendants does not have an established business relationship or (5) which did not display a proper opt out notice.

35.  A class action is warranted because:

a.      On information and belief, the class includes more than forty persons and is so numerous that joinder of all members is impracticable.

b.      There are questions of fact or law common to the class predominating over questions affecting only individual class members, including without limitation:

i.       Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

ii.      Whether Exhibits A-B and other faxes transmitted by or on behalf of Defendant contains material advertising the commercial availability of any property, goods or services;

iii.     Whether Defendants' facsimiles advertised the commercial availability of property, goods, or services;

iv.      The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent Exhibits A-B and other unsolicited faxed advertisements;

v.       Whether Defendants faxed advertisements without first obtaining the recipients' prior express permission or invitation;

vi.      Whether Defendants violated the provisions of 47 USC § 227;

vii.     Whether Plaintiff and the other class members are entitled to statutory damages;

7

viii.     Whether Defendants knowingly violated the provisions of 47 USC §

227;

ix.     Whether Defendants should be enjoined from faxing advertisements

in the future;

x.     Whether the Court should award trebled damages; and

xi.     Whether Exhibits A-B and the other fax advertisements sent by or on

behalf of Defendant displayed the proper opt out notice required by 64

C.F.R. 1200.

c.     Plaintiff's claims are typical of the other class members.

d.     Plaintiff will fairly and adequately protect the interests of the other class

members.  Plaintiff's counsel are experienced in handling class actions and claims

involving unsolicited advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has

any interests adverse or in conflict with the absent class members.

e.     A class action is the superior method for adjudicating this controversy fairly

and efficiently.  The interest of each individual class member in controlling the

prosecution of separate claims is small and individual actions are not economically

feasible.

36.     Plaintiff will fairly and adequately protect the interests of the other class members.

Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited

advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict

with the absent class members.

Electronically Filed - St Louis County - March 02, 2015 - 04:43 PM

37.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

38.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227(b)(1).

39.    The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

40.    The TCPA provides:

> <u>Private right of action</u>.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> (A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C)    Both such actions.

41.    The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

42.    The TCPA is a strict liability statute and the Defendants are liable to Plaintiff and the other class members even if their actions were only negligent.

43.    Defendants' actions caused damages to Plaintiff and the other class members. Receiving Defendants' advertising faxes caused the recipients to lose paper and toner consumed in

Electronically Filed - St Louis County - March 12, 2015 - 03:43 PM

the printing of Defendants' faxes.  Moreover, Defendants' actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine.  Defendants' faxes cost Plaintiff time, as Plaintiff and/or its employees wasted their time receiving, reviewing and routing Defendants' unlawful faxes.  That time otherwise would have been spent on Plaintiff's business activities.   Finally, Defendants' faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

44.     Defendants did not intend to cause damage to Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to interfere with recipients' fax machines or consume the recipients' valuable time with Defendants' advertisements.

45.     If the court finds that Defendants knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (B) of this paragraph.  47 U.S.C. § 227(b)(3).

46.     Defendants knew or should have known that: (A) Plaintiff and the other class members had not given express permission or invitation for Defendants or anyone else to fax advertisements about Defendants' goods or services, (B) Defendants did not have an established business relationship with Plaintiff and the other members of the class, (C) Exhibits A-B and the other facsimile advertisements were advertisements, and (D) Exhibits A-B and the other facsimile advertisements did not display the proper opt out notice.

47.     Defendants violated 47 U.S.C. § 227 et seq. by transmitting Exhibits A-B and the other facsimile advertisements hereto to Plaintiff and the other members of the class without

obtaining their prior express permission or invitation and not displaying the proper opt out notice required by 64 C.F.R. 1200.

48.     Defendants knew or should have known that:  (a) Exhibits A-B and the other facsimile advertisements were advertisements; (b) Defendants did not obtain prior permission or invitation to send facsimile advertisements, including Exhibits A-B; (c) Defendants did not have an established business relationship with Plaintiff or the other members of the class and (d) Exhibits A-B and the other facsimile advertisements did not display a proper opt out notice.

49.     Defendants engaged in the transmission of Exhibits A-B and the other facsimile advertisements believing such a transmissions were legal based on Defendants' own understanding of the law and/or based on the representations of others on which Defendants reasonably relied.

50.     Defendants did not intend to send transmission of Exhibits A-B and the other facsimile advertisements to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmission of Exhibits A-B and the other facsimile advertisements were sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendants' own understanding of the law and/or based on the representations of others on which Defendants reasonably relied.

51.     Defendants failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission of Exhibits A-B and the other facsimile advertisements both to others in general, and specifically to Plaintiff.

52.     Defendants' actions caused damages to Plaintiff and the other class members, because their receipt of Defendants' unsolicited fax advertisements caused them to lose paper and toner consumed as a result.  Defendants' actions prevented Plaintiff's fax machine from being used

for Plaintiff's business purposes during the time Defendants were using Plaintiff's fax machine for Defendants' unauthorized purpose.  Defendants' actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing and reviewing Defendants' unauthorized faxes and that time otherwise would have been spent on Plaintiff's business activities.  Finally, the injury and property damage sustained by Plaintiff and the other members of the class occurred outside of Defendants' premises.  Pursuant to law, Plaintiff, and each class member, instead may recover $500 for each violation of the TCPA.

WHEREFORE, Plaintiff, RADHA GEISMANN, M.D., P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendants, GE HEALTHCARE, INC., and JOHN DOES 1-10, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award between $500.00 and $1,500.00 in damages for each violation of the TCPA;

C.     That the Court enter an injunction prohibiting the Defendants from engaging in the statutory violations at issue in this action; and

D.     That the Court award costs and such further relief as the Court may deem just and proper.

E.     That the Court award pre-judgment and post-judgment interest at the statutory rate of 9%.

Electronically Filed - St Louis County - March 02, 2015 - 03:43 PM

## COUNT II
## CONVERSION

53.     Plaintiff incorporates Paragraphs 3 and 4, 10, 13 – 16, 22 – 24 and 27 – 32 as for its paragraph 53.

54.     In accordance with Mo. S. Ct. Rule 52.08, Plaintiff brings Count II for conversion under the common law for the following class of persons:

> All persons who on or after five years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendants with respect to whom Defendants cannot provide evidence of prior express permission or invitation.

55.     A class action is proper in that:

a.     On information and belief the class is so numerous that joinder of all members is impracticable.

b.     There are questions of fact or law common to the class predominating over all questions affecting only individual class members, including:

i.     Whether Defendants engaged in a pattern of sending unsolicited faxes;

ii.     Whether Defendants sent faxes without obtaining the recipients' prior express permission or invitation of the faxes;

iii.     The manner and method Defendants used to compile or obtain the list of fax numbers to which it sent Exhibits A-B and other unsolicited faxes;

iv.     Whether Defendants committed the tort of conversion; and

v.     Whether Plaintiff and the other class members are entitled to recover actual damages and other appropriate relief.

13

Electronically Filed - St Louis County - March 2, 2015 - 03:43 PM

c.      Plaintiff's claims are typical of the other class members.

d.      Plaintiff will fairly and adequately protect the interests of the other class members.  Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

e.      A class action is the superior method for adjudicating this controversy fairly and efficiently.  The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

56.     Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who is experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

57.     A class action is an appropriate method for adjudicating this controversy fairly and efficiently.  The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

58.     By sending Plaintiff and the other class members unsolicited faxes, Defendants improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendants also converted Plaintiff's employees' time to Defendants' own use.

59.     Immediately prior to the sending of the unsolicited faxes, Plaintiff, and the other class members owned an unqualified and immediate right to possession of their fax machine, paper, toner, and employee time.

60.     By sending the unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to Defendants' own use.   Such misappropriation was wrongful and without authorization.

61.     Defendants knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

62.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose.   Plaintiff and each class member thereby suffered damages as a result of the sending of unsolicited fax advertisements from Defendants.

63.     Each of Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' unlawful faxes.   Defendants knew or should have known employees' time is valuable to Plaintiff.

64.     Defendants' actions caused damages to Plaintiff and the other members of the class because their receipt of Defendants' unsolicited faxes caused them to lose paper and toner as a result.   Defendants' actions prevented Plaintiff's fax machines from being used for Plaintiff's business purposes during the time Defendants was using Plaintiff's fax machines for Defendants' unlawful purpose.   Defendants' actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendants' unlawful faxes, and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, RADHA GEISMANN, M.D., P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendants, GE HEALTHCARE, INC., as follows:

     A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

     B.     That the Court award appropriate damages;

     C.     That the Court award costs of suit; and

     D.     Awarding such further relief as the Court may deem just and proper.

**COUNT III**
**MISSOURI CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**Chapter 407**

65.     Plaintiff incorporates Paragraphs 3 and 4, 10, 13 – 16, 22 – 24 and 27 – 32 as for its paragraph 65.

66.     In accordance with Chapter 407, Plaintiff, on behalf of the following class of persons, bring Count III for Defendants' unfair practice of sending unsolicited and unlawful fax advertisements:

> All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendants with respect to whom Defendants cannot provide evidence of prior express permission or invitation.

67.     A class action is proper in that:

     a.     On information and belief the class consists of over 40 persons in Missouri and throughout the United States and is so numerous that joinder of all members is impracticable.

16

Electronically Filed - St Louis County - March 22, 2015 - 03:43 PM

b.     There are questions of fact or law common to the class predominating over all questions affecting only individual class members including:

      i.     Whether Defendants engaged in a pattern of sending unsolicited faxes;

      ii.     The manner and method Defendants used to compile or obtain the list of fax numbers to which it sent Exhibits A-B and other unsolicited faxes;

      iii.     Whether Defendants' practice of sending unsolicited faxes violates Missouri public policy;

      iv.     Whether Defendants' practice of sending unsolicited faxes is an unfair practice under the Missouri Merchandising Practices Act (MMPA), Chapter 407 RSMO; and

      v.     Whether Defendants should be enjoined from sending unsolicited fax advertising in the future.

c.     Plaintiff's claims are typical of the other class members.

d.     Plaintiff will fairly and adequately protect the interests of the other class members.  Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

e.     A class action is the superior method for adjudicating this controversy fairly and efficiently.  The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

68.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who are experienced in handling class actions and claims involving lawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

69.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

70.    Defendants' unsolicited fax practice is an unfair practice, because it violates public policy, and because it forced Plaintiff and the other class members to incur expense without any consideration in return. Defendants' practice effectively forced Plaintiff and the other class members to pay for Defendants' advertising campaign.

71.    Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

72.    Defendants' misconduct caused damages to Plaintiff and the other members of the class, including the loss of paper, toner, ink, use of their facsimile machines, and use of their employees' time.

73.    Defendants' actions caused damages to Plaintiff and the other class members because their receipt of Defendants' unsolicited faxes caused them to lose paper and toner consumed as a result. Defendants' actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendants was using Plaintiff's fax machine for Defendants' unlawful purpose. Defendants' actions also cost Plaintiff employee time, as

18

Plaintiff's employees used their time receiving, routing, and reviewing Defendants' unlawful faxes and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, RADHA GEISMANN, M.D., P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendants, GE HEALTHCARE, INC., and JOHN DOES 1-10, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award damages to Plaintiff and the other class members;

C.    That the Court award treble damages to Plaintiff and the other class members for knowing violations of the TCPA;

D.    That the Court declare that Defendants' conduct violated the TCPA and that this action is just and proper;

E.    That the Court award damages for conversion of the plaintiffs and the class for violation of their rights;

F.    That the Court award damages and attorney fees for violation of Chapter 407;

G.    That the Court award attorney fees and costs;

H.    That the Court award all expenses incurred in preparing and prosecuting these claims;

I.    That the Court enter an injunction prohibiting Defendants from sending faxed advertisements; and

J.    Awarding such further relief as the Court may deem just and proper.

Respectfully submitted,

_____/s/ Max G. Margulis_____
Max G. Margulis, #24325
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P:  (636) 536-7022 – Residential
F:  (636) 536-6652 – Residential
E-Mail: MaxMargulis@MargulisLaw.com
*Attorneys for Plaintiff*

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Phone:  (847) 368-1500
Fax:  (847) 368-1501
E-Mail: bwanca@andersonwanca.com

6/24/2014  10:51  770-986-7069  To: Dr. Radha Geismann

33l6a X                                                                D 1/2

Electronically Filed · St. Louis County · March 02, 2015 · 03:43 PM

Peer Perspectives for Visual Clarity

**DaTscan™℗**
**Ioflupane I 123 Injection**



**"Because dopamine neurons are lost in parkinsonian syndromes, but not in nonparkinsonian disorders such as essential tremor, seeing evidence of that loss helps in my differential diagnosis."**

– David Russell, MD, PhD
Associate Clinical Research Director, Institute for Neurodegenerative Disorders
Assistant Clinical Professor, Yale University School of Medicine

## DaTscan, the first and only FDA-approved visual adjunct imaging agent to aid in the differentiation between essential tremor and parkinsonian syndromes

"We neurologists have very high clinical diagnostic sensitivity. In one study, over 90% of the people with Parkinson's disease were accurately diagnosed. But, specificity was extremely low — and my own experience corroborates this. **Almost half of patients in that study who had symptoms but did not have Parkinson's disease had first been diagnosed as having it.**[1]

I find that brain SPECT imaging with **DaTscan is useful,** because it tags dopamine transporters and **gives me a direct indication of dopamine terminal loss.**" — Dr. Russell

## Like Dr. Russell, consider prescribing brain SPECT imaging with DaTscan for your appropriate patients.

For more information on how visualization of striatal dopamine transporter (DaT) distribution may aid in the clinical diagnosis of parkinsonian syndromes, **visit US.DaTscan.com/fax.**

DaTscan is a federally controlled substance (Schedule II). A DEA license is required for handling or administering this controlled substance.

### Important Risk and Safety Information About DaTscan

**INDICATIONS AND USE:** DaTscan is a radiopharmaceutical indicated for striatal dopamine transporter visualization using single-photon emission computed tomography (SPECT) brain imaging to assist in the evaluation of adult patients with suspected parkinsonian syndromes (PSs). DaTscan may be used to help differentiate essential tremor from tremor due to PS (idiopathic Parkinson's disease [PD], multiple system atrophy [MSA], and progressive supranuclear palsy [PSP]). DaTscan is an adjunct to other diagnostic evaluations. DaTscan was not designed to distinguish among PD, MSA, and PSP. The effectiveness of DaTscan as a screening or confirmatory test and for monitoring disease progression or response to therapy has not been established. **CONTRAINDICATIONS:** DaTscan is contraindicated in patients with known hypersensitivity to the active substance, any of the excipients, or iodine. **WARNINGS AND PRECAUTIONS — Hypersensitivity Reactions:** Hypersensitivity reactions, generally consisting of skin erythema and pruritus, have been reported following DaTscan administration. **Thyroid Accumulation:** The DaTscan injection may contain up to 6% of free iodide (iodine 123 or I-123). To decrease thyroid accumulation of I-123, block the thyroid gland at least one hour before administration of DaTscan; failure to do so may increase the long-term risk for thyroid neoplasia.

**Please see additional Important Risk and Safety Information About DaTscan on the following page.**




EXHIBIT A

33166

Filed in Case Filed · St. Louis County · March 02 2015 · 03:43 PM

## Important Risk and Safety Information About DaTscan™ (Ioflupane I 123 injection) (cont'd)

**ADVERSE REACTIONS:** In clinical trials, headache, nausea, vertigo, dry mouth, or dizziness of mild to moderate severity were reported. In postmarketing experience, hypersensitivity reactions and injection-site pain have been reported. **DRUG INTERACTIONS:** Drugs that bind to the dopamine transporter with high affinity may interfere with the DaTscan image. The impact of dopamine agonists and antagonists on DaTscan imaging results has not been established. **SPECIFIC POPULATIONS — Pregnancy:** It is unknown whether DaTscan can cause fetal harm or increase the risk of pregnancy loss in pregnant women. DaTscan should be given to pregnant women only if clearly needed. Like all radiopharmaceuticals, DaTscan may cause fetal harm, depending on the stage of fetal development and the magnitude of the radionuclide dose. Radioactive iodine products cross the placenta and can permanently impair fetal thyroid function. **Nursing Mothers:** It is not known whether DaTscan is excreted into human milk; however, I-123 is excreted into human milk. Because many drugs are excreted into human milk and because of the potential for serious adverse reactions in nursing infants, a decision should be made whether to interrupt nursing after administration of DaTscan or not to administer DaTscan at all. Nursing women may consider interrupting nursing and pump and discard breast milk for six days after DaTscan administration to minimize risks to a nursing infant. **Pediatric Use:** The safety and efficacy of DaTscan have not been established in pediatric patients. **Geriatric Use:** There were no differences in responses between the elderly and younger patients that would require a dose adjustment. **Renal and Hepatic Impairment:** The effect of renal or hepatic impairment on DaTscan imaging has not been established. The kidney excretes DaTscan; patients with severe renal impairment may have increased radiation exposure and altered DaTscan images. **DRUG ABUSE AND DEPENDENCE:** Ioflupane I 123 Injection is a DEA Schedule II controlled substance. A DEA license is required for handling or administering this controlled substance. **OVERDOSAGE:** It is unknown whether or not ioflupane is dialyzable. The major risks of overdose relate to increased radiation exposure and long-term risk for neoplasia. In case of radioactivity overdosage, frequent urination and defecation should be encouraged to minimize radiation exposure to the patient. **PROCEDURE — Radiation Safety:** DaTscan emits radiation and must be handled with safety measures to minimize radiation exposure to clinical personnel and patients.

**Prior to DaTscan administration, please read the Full Prescribing Information available at US.DaTscan.com/fax/pi.**

**Reference: 1.** Data on file, DaTscan New Drug Application. GE Healthcare; 2013.

## Go to US.DaTscan.com for more information.

Customer Service 800 292 8514
Reimbursement Hotline 800 767 6664
Medical Affairs 800 654 0118 (option 2, then option 3)

www.gehealthcare.com

You have opted to receive this kind of information. If you would like to unsubscribe from our fax list, please email us at: unsubscribe.DaTscan@ge.com. If you unsubscribe, you will no longer receive communications from DaTscan.

CONFIDENTIAL: This transmission is strictly confidential and intended solely for the addressees. It may contain information that is covered by legal, professional, or other privilege. If you are not the intended recipient, you must not disclose, copy, or take any action in reliance on this transmission. If you have received this transmission in error, please notify the sender as soon as possible.



© 2014 General Electric Company – All rights reserved. GE, the GE Monogram, and imagination at work are trademarks of General Electric Company. DaTscan is a trademark of General Electric Company or one of its subsidiaries.

April 2014 73-J818826USo

 imagination at work

 EXHIBIT A

Electronically Filed - St Louis County - March 02, 2015 - 03:43 PM

Radha Geismann M.D. P.C.

X



Is your ECG system prepared for the new FAA submittal requirement?

Attn: Aviation Medical Examiners (AME's),

# The use of modem transmission will no longer be available after September 30, 2014[1]

## Are you ready?

GE Healthcare has the right solution for you!

Visit **mdsolutions.gehealthcare.com/FAA** to make the right connection!

1. http://www.faa.gov/other_visit/aviation_industry/designees_delegations/designee_types/ame/ecgmodernization/



EXHIBIT B

JB23105US

**15SL-CC00779**

Electronically Filed - St Louis County - March 02, 2015 - 03:44 PM

### IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
### STATE OF MISSOURI

RADHA GEISMANN, M.D., P.C., individually
and on behalf of all others similarly-situated,

      Plaintiff,

v.

GE HEALTHCARE, INC.,
and  JOHN DOES 1-10,

Cause No.

Division

### MOTION FOR CLASS CERTIFICATION [1]

      COMES NOW Plaintiff, individually and on behalf of all others similarly situated, by and through its undersigned counsel, and for its Motion for Class Certification, states

      1.     This cause should be certified as a class because all of the necessary elements of Rule 52.08 are met.

      2.     Plaintiff requests that the Court certify a class, so the common claims of the Class members, based on a uniform legal theory and factual allegations applicable to all Class members, can be resolved on a class-wide basis.

      3.     Plaintiff proposes the following Class definition:

---

1.    Recent developments in class action practice make necessary the filing of this motion with the petition. Defendants in class litigation have resorted to making individual settlement offers to named plaintiffs before a class action is certified in an attempt to "pick-off" the putative class representative and thereby derail the class action litigation. Most courts have rejected these pick-off attempts and have held that the filing of a motion for class certification with the initial petition or within a number of days after service of any settlement offer to a named plaintiff staves off offers of judgment to the named plaintiff. Any settlement offer made after the filing of the motion for class certification must be made on a class-wide basis. *See Alpern v. UtiliCorp United*, 84 F.3d 1525 (8th Cir. 1996); *Weiss v. Regal Collections*, 385 F. 3d 337, 344 n. 12 (3d Cir. 2004); *see Jancik v. Cavalry Portfolio Servs.*, 2007 WL 1994026, at *2–3 (D. Minn. July 3, 2007) *Harris v. Messerli & Kramer, P.A.*, 2008 WL 508923, at *2–3 (D. Minn. Jan. 2, 2008) (same); *Johnson v. U.S. Bank Nat'l Assn.*, 276 F.R.D. 330, 333-335 (D. Minn. 2011) (same). *See also Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249 (10th Cir. 2011); *Mey v. Monitronics Int'l, Inc.*, 2012 WL 983766, at * 4-5 (N.D. W.Va. Mar. 22, 2012); *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 723 F.Supp.2d 1020, 1029 (N.D. Ohio 2010); *McDowall v. Cogan*, 216 F.R.D. 46, 48-50 (E.D. N.Y. 2003).
2.

Electronically Filed - St Louis County - March 02, 2015 - 03:43 PM

All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages of material advertising pharmaceutical products by or on behalf of Defendants.

4.      Under Rule 52.08(a)(1), to bring a Class action, the Class must be "so numerous that joinder of all members is impracticable." Rule 52.08(a)(1). Here, there are at least hundreds of persons who fall within the Class definition. Thus, the numerosity requirement of Rule 52.08(a)(1) is satisfied.

5.      There are questions of law or fact common to the Class members.

6.      The claims or defenses of the representative parties are typical of the claims or defenses of this Class.

7.      Plaintiff and its counsel will fairly and adequately protect the interest of the Class.

8.      Common issues of law or fact predominate over any individual issues, and a class action is the superior method for the fair and efficient adjudication of this controversy.

9.      The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class.

10.     The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

11.     Plaintiff requests additional time to file its supporting Memorandum of Law after the Court sets up an appropriate discovery schedule.   Written discovery related to class certification issues is presently outstanding.

WHEREFORE, Plaintiff prays that this Court certify this case as a class action, grant statutory injunctive relief prohibiting Defendants from sending advertising materials via fax to

members of the class, and further pray that the Court appoint Plaintiff as Class Representative, appoint Plaintiff's attorneys Class Counsel; that this Court allow Plaintiff additional time, for completion of discovery related to class certification issues, to file its Memorandum of Law in Support of this Motion; and for such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

/s/ Max G. Margulis
Max G. Margulis, #24325
MARGULIS LAW GROUP
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P:  (636) 536-7022 – Residential
F:  (636) 536-6652 – Residential
E-Mail:  MaxMargulis@MargulisLaw.com

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
P: (847) 368-1500
F: (847) 368-1501
E-Mail: bwanca@andersonwanca.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the Defendant GE HEALTHCARE, INC. by the process server at the same time as the petition.

_____ /s/ Max G. Margulis _____

3

Electronically Filed - St Louis County - March 02, 2015 - 03:43 PM

**15SL-CC00779**

In the
# CIRCUIT COURT
### Of St. Louis County, Missouri



_Radha Geismann M.D. P.C._
Plaintiff/Petitioner _individually and on behalf
of all others similarly situated_
vs.

_GE Healthcare Inc. and John Does_
Defendant/Respondent   _1-10_

Date _3.2.15_

For File Stamp Only

Case Number _____

Division _____

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now _Max G Margulis attorney for Plaintiff_ _____, pursuant
Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
_Stephen Tomkowski  18 Dogwood Dr. New Milford CT 06776   860·788·6698_
Name of Process Server                          Address                                    Telephone

_____     _____     _____
Name of Process Server          Address or in the Alternative          Telephone

_____     _____     _____
Name of Process Server          Address or in the Alternative          Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:
_CT Corporation System_
Name
_1 Corporate Center_
Address
_Hartford CT 06103_
City/State/Zip _Hartford County_

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

_Max G. Margulis_
Max G. Margulis                                   24325
Attorney/Plaintiff/Petitioner
By _____                     _28 Old Belle Monte Rd.   Chesterfield, MO 63017_
Deputy Clerk                           Bar No. _(636) 536-7022_               _(636) 536-6652_
                                        Address
_____                         _MaxMargulis@Margulislaw.com_
Date                                    Phone No.                              Fax No.

CCADMS2   Rev. 03/06        WHITE-File          YELLOW-Special Process Server      PINK-Attorney/Petitioner



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>TOM W DE PRIEST JR | Case Number:  15SL-CC00779 |
|---|---|
| Plaintiff/Petitioner:<br>RADHA GEISMANN MD PC | Plaintiff's/Petitioner's Attorney/Address:<br>MAX GEORGE MARGULIS<br>28 OLD BELLE MONTE ROAD<br>CHESTERFIELD, MO  63017 |
| Defendant/Respondent:<br>GE HEALTHCARE, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>7900 CARONDELET AVE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Injunction | |

vs.

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  **GE HEALTHCARE, INC.**
**Alias:**

**CT CORPORATION SYSTEM**
**ONE CORPORATE CENTER**
**HARTFORD, CT  06103-3320**

*COURT SEAL OF*

*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
    SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

05-MAR-2015
**Date**
**Further Information:**
TLC

_Clerk_

---

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
   _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
   _____ (name) _____ (title).
   ☐ other (describe) _____
   _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                   ☐ the judge of the court of which affiant is an officer.
(Seal)             ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                   ☐ authorized to administer oaths.  (use for court-appointed server)

_____
Signature and Title

---

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____  (_____ miles @ $ _____ per mile) |
| Total | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

### Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54.  The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered.  The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service.  The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy.  The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy.  If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons.  This form is not for use in attachment actions.  (See Rule 54.06, 54.07 and 54.14)

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-04) SM60 *For Court Use Only:* **Document ID# 15-SMOS-200**      4      **(15SL-CC00779)**                    Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

## AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| **State of Missouri** | **County of St Louis County** | **21st Judicial Circuit Court** |

Case Number: 15SL-CC00779

Plaintiff:
**Radha Geismann MD PC**
vs.
Defendant:
**GE Healthcare, Inc.**

For:
Max Margulis
28 Old Belle Monte Rd
Chesterfield, MO  63017

Received by Max Margulis to be served on **GE Healthcare C/O CT Corporation System, One Corporate Center, Hartford, CT 06103.**

I, Stephen Tomkowski, being duly sworn, depose and say that on the **19th day of March, 2015 at 10:52 am, I:**

served a **CORPORATION** by delivering a true copy of the **Summons and Complaint Class Action Petition, Plaintiff's First Set of Interogatorries Directed to GE Healthcare, Inc** with the date and hour of service endorsed thereon by me, to: **Gary Scapinni as Manager / Ct Corporation System** for GE Healthcare C/O CT Corporation System, at the address of: **One Corporate Center, Hartford, CT 06103**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served:  Age: 50,  Sex: M,  Race/Skin Color: W,  Height: 6',  Weight: 180,  Hair: GRAY, Glasses: Y

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 23rd day of March, 2015 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

*My Commission Expires*
*February 28, 2017*

_____
**Stephen Tomkowski**
Process Server

**Max Margulis**
**28 Old Belle Monte Rd**
**Chesterfield, MO 63017**
**(636) 536-7022**

Our Job Serial Number: DCT-2015002108

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

Electronically Filed - St Louis County - March 27, 2015 - 02:19 PM

**Due Process CT**
**18 Dogwood Drive**
**New Milford, CT 06776**
**Phone: (860) 788-6698**
**041543664**

## INVOICE

**Invoice #DCT-2015002108**
**3/23/2015**



Max Margulis
28 Old Belle Monte Rd
Chesterfield, MO 63017

**Case Number: St Louis County 15SL-CC00779**

Plaintiff:
**Radha Geismann MD PC**

Defendant:
**GE Healthcare, Inc.**

Served: 3/19/2015 10:52 am
To be served on: GE Healthcare C/O CT Corporation System

### ITEMIZED LISTING

| Line Item | Quantity | Price | Amount |
|---|---|---|---|
| Service Fee (Statewide) | 1.00 | 60.00 | 60.00 |
| **TOTAL CHARGED:** | | | **$60.00** |
| 03/16/2015 Pre-Payment | | | 60.00 |
| **BALANCE DUE:** | | | **$0.00** |

**Thank you for your business!**

**Thanks again and all the best!**

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

STATE OF MISSOURI    )
                          )
COUNTY OF ST. LOUIS    )

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

| | |
|---|---|
| RADHA GEISMANN, M.D., P.C., individually and on behalf of all others similarly-situated, | Cause No. 15SL-CC00779 |
| Plaintiff, | Division 8 |
| v. | |
| GE HEALTHCARE, INC., and  JOHN DOES 1-10, | |
| Defendant | |

### CERTIFICATE OF SERVICE OF DISCOVERY ISSUED TO
### DEFENDANT GE HEALTHCARE INC.

The undersigned certifies that Plaintiff's First Set of Interrogatories to Defendant, Plaintiff's First Request for Admissions Directed to Defendant and Plaintiff's First Request for Production of Documents Directed to Defendant were served on the Defendant, GE Healthcare, Inc., by the process server on the 19th day of March, 2015.


                  /s/   Max G. Margulis
               Max G. Margulis, #24325
              MARGULIS LAW GROUP
              28 Old Belle Monte Rd.
              Chesterfield, MO 63017
          P:  (636) 536-7022 - Residential
          F:  (636) 536-6652 - Residential
     E-Mail:  MaxMargulis@MargulisLaw.com

# AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| **State of Missouri** | **County of St Louis County** | **21st Judicial Circuit Court** |

Case Number: 15SL-CC00779

Plaintiff:
**Radha Geismann MD PC**
vs.
Defendant:
**GE Healthcare, Inc.**

For:
Max Margulis
28 Old Belle Monte Rd
Chesterfield, MO  63017

Received by Max Margulis to be served on **GE Healthcare C/O CT Corporation System, One Corporate Center, Hartford, CT 06103.**

I, Stephen Tomkowski, being duly sworn, depose and say that on the **19th day of March, 2015 at 10:52 am, I:**

served a **CORPORATION** by delivering a true copy of the **Summons and Complaint Class Action Petition, Plaintiff's First Set of InterogatorriesDirected to GE Healthcare, Inc** with the date and hour of service endorsed thereon by me, to: **Gary Scapinni** as **Manager / Ct Corporation System** for GE Healthcare C/O CT Corporation System, at the address of: **One Corporate Center, Hartford, CT 06103,** and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served:  Age: 50,  Sex: M,  Race/Skin Color: W,  Height: 6',  Weight: 180,  Hair: GRAY, Glasses: Y

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 23rd day
of March, 2015 by the affiant who is personally known
to me.

**NOTARY PUBLIC**

*My Commission Expires*
*February 28, 2017*

**Stephen Tomkowski**
Process Server

**Max Margulis**
**28 Old Belle Monte Rd**
**Chesterfield, MO 63017**
**(636) 536-7022**

Our Job Serial Number: DCT-2015002108

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

Electronically Filed - St Louis County - March 27, 2015 - 02:19 PM

**Due Process CT**
**18 Dogwood Drive**
**New Milford, CT 06776**
**Phone: (860) 788-6698**
**041543664**

# INVOICE

**Invoice #DCT-2015002108**
**3/23/2015**



Max Margulis
28 Old Belle Monte Rd
Chesterfield, MO 63017

**Case Number: St Louis County 15SL-CC00779**

Plaintiff:
**Radha Geismann MD PC**

Defendant:
**GE Healthcare, Inc.**

Served: 3/19/2015 10:52 am
To be served on: GE Healthcare C/O CT Corporation System

### ITEMIZED LISTING

| Line Item | | Quantity | Price | Amount |
|---|---|---|---|---|
| Service Fee (Statewide) | | 1.00 | 60.00 | 60.00 |
| TOTAL CHARGED: | | | | $60.00 |
| 03/16/2015 | Pre-Payment | | | 60.00 |
| **BALANCE DUE:** | | | | **$0.00** |

**Thank you for your business!**

**Thanks again and all the best!**

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n